## SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release ("Agreement") is made on July 2, 2015, between: Mathis Tire and Auto Service, Inc., Direct Tire Distributors, Inc., (hereinafter referred to as "Defendants") and the class of Plaintiffs who have opted into this action and who are represented by Billy J. Kidd in the case that is currently pending against Defendants in the United States District Court for the Western District of Tennessee.

### I.   PURPOSE

1.1   This Agreement is made as a compromise and final settlement of disputed claims brought by Plaintiff for alleged violations by Defendants of the Fair Labor Standards Act ("FLSA"), for the time period beginning on September 10, 2011 to the date of the execution of this Settlement Agreement and Release for the Representative Plaintiff; and through the date of execution of the class member settlement agreement for all other Plaintiffs.

### II.   DEFINITIONS

2.1   "Case" shall mean <u>Billy J. Kidd, et al. v. Mathis Tire & Auto Service, Inc., and Direct Tire Distributors, Inc.</u>, Civil Action No. 2:14-cv-02298 in the United States District Court for the Western District of Tennessee.

2.2   "Court" shall mean the United States District Court for the Western District of Tennessee.

2.3   "Representative Plaintiff" shall mean Billy J. Kidd.

2.4   "Opt-In Plaintiffs" shall mean the class of Plaintiffs who have opted in to this action and who are represented by Billy J. Kidd in the case that is currently pending against Defendants in the United States District Court for the Western District of Tennessee, with the exception of Representative Plaintiff.

2.5 "Plaintiffs" shall mean every plaintiff who has opted into the case by filing a written consent form, including but not limited to the Representative Plaintiffs, but excluding those opt-in plaintiffs that have withdrawn their consent to join form for dismissal.

2.6 "Defendants" shall mean Mathis Tire and Auto Service, Inc. and Direct Tire Distributors, Inc., their parents, subsidiaries, affiliates, and all of their respective or former agents, employees, officers, directors, members, owners, partners, shareholders, consultants, attorneys, successors, and insurers, including Walter Mathis and Curtis Clifton (collectively the "Released Parties").

2.7 "Parties" shall mean Representative Plaintiff, Opt-In Plaintiffs, Plaintiffs, and Defendants.

2.8 "Agreed Order of Dismissal with Prejudice" shall mean the Order, filed jointly by Plaintiffs' Counsel and Defendants' Counsel in the Case, seeking dismissal of the Case with prejudice. A copy of an unexecuted Agreed Order of Dismissal with Prejudice is attached hereto as Attachment A.

2.9 "Class" and "Class Member Plaintiffs," shall mean those persons who filed consent to join forms in the case and have not been dismissed.

2.10 "Relevant Time" or "Relevant Time Period" shall mean from September 10, 2011 through the date of complete execution of this Settlement Agreement and Release for Representative Plaintiffs; and, through the date of execution of the class member settlement agreement for all other Plaintiffs.

2.11 "Administrator" means an entity engaged by Defendants to handle disbursement of settlement funds in this matter, or Defendants, if Defendants elect to administer the settlement itself.

2.12    "Wage Settlement Check" means a check representing the *pro rata* share of the back wage recovery in this matter due to each Plaintiff that will be delivered to each Plaintiff in exchange for a Release of claims.

2.13    "Liquidated Damages Check" means a check representing the *pro rata* share of the liquidated damages due each Plaintiff that will be delivered to each Plaintiff in exchange for Release of claims.

2.14    "Service Payment" means an additional payment, treated as compensatory damages, which shall be paid to the Representative Plaintiff in acknowledgement of their role and service as Representative Plaintiff in this matter.

### III.    SETTLEMENT OF DISPUTES

3.1    This case was brought as a collective action under the FLSA. Plaintiffs allege Defendants violated applicable wage and hour law by failing to properly pay overtime and/or by not compensating employees for all hours worked. The case seeks, among other relief, overtime pay, liquidated and other damages, attorneys' fees, and equitable relief.

3.2    Defendants deny that they violated applicable wage and hour law or any other law, requirement, or common-law principles or otherwise treated Plaintiffs or any other individuals improperly regarding the payment of wages or compensation for time worked.

3.3    The parties engaged in extensive discovery in this matter for various issues including, but not limited to, whether Plaintiffs and other technicians/mechanics are/were similarly-situated for purposes of the FLSA; whether Plaintiffs and other technicians/mechanics are/were exempt from the FLSA under section 7(e) of the FLSA (retail-sales commissions exemption); whether Defendants violated the FLSA's overtime and minimum wage provisions; what damages are Plaintiffs and Opt-in Plaintiffs owed, if any; are Plaintiffs entitled to liquidated damages; was Defendants' violationwillful to permit Plaintiffs to receive damages for a third

3

year; and a host of other issues. The parties litigated these issues for over one year. This litigation included extensive written discovery and depositions. Plaintiffs propounded class discovery to Defendants, and Defendants propounded requests for production, interrogatories, and requests for admission to each Plaintiff. Further, the parties took numerous depositions including depositions of representative Plaintiff Billy Kidd, Opt-in Plaintiff Robert Durdin, and for each of the Defendants' corporate representatives, owner Walter Mathis, general manager Curtis Clifton, and store manager Ron Wood.

    3.4    The Parties engaged in a mediation of this matter on both March 25, 2015 and April 9, 2015. The mediations, which took place at the offices of Blair Mediation Group in Memphis, Tennessee, were conducted by Allen Blair, lasted over eight (8) hours and entailed arm's-length bargaining among the parties and their counsel. The parties' desire to reach a full and final compromise and settlement of the case and all claims pertaining to Defendants' alleged violated the provisions of the FLSA with respect to Plaintiffs. The Parties acknowledge and agree that this Lawsuit involves *bona fide* disputed issues of law and fact including, but not limited to, whether Defendants are/were joint employers for FLSA purposes; whether Plaintiffs are/were similarly situated; whether Plaintiffs are/were properly classified as exempt under the retail-sales commission exemption set forth in Section 7(e) of the FLSA; whether Plaintiffs are/were properly paid overtime and/or compensated for all hours worked; whether Plaintiffs are/were owed liquidated damages; and whether Defendants' alleged violation are/were willful. All such issues were discussed at length during the course of the mediation in this matter. The Parties acknowledge and agree that given these *bona fide* disputes as to the issues of law and fact, this Agreement is the result of a negotiation and compromise by the Parties as to the disputed issues and is a fair and reasonable settlement of Plaintiffs' claims. The parties

acknowledge that settlement of this Case is dependent upon and subject to the conditions for final settlement as outlined herein.

### IV. COURT APPROVAL

4.1     The Parties agree that settlement of this Case is contingent upon the Court's approving the terms of settlement and entering the Agreed Order of Dismissal with Prejudice. The Parties agree to jointly submit this Agreement to the Court for review, along with a joint request for approval of the settlement and dismissal of the Lawsuit.  In the event the Court requires the Parties to submit legal briefing and/or attend a hearing to obtain approval as to the reasonableness or fairness of the terms of this settlement agreement, the Parties agree to cooperate with respect to apprising the Court regarding the history of the case and terms of settlement.

### V. FINANCIAL TERMS OF SETTLEMENT

5.1     In accordance with the provision below, Defendant shall pay to Opt-in Plaintiffs, Representative Plaintiff, and Plaintiffs' Counsel, Morgan & Morgan and Crone & McEvoy, a total sum not to exceed ███████████████████████████████ ████████████████████ in full and complete settlement of any and all claims, fees, costs, and expenses that the Plaintiffs or their counsel have or may have against Defendants as a result of the allegations or claims as set forth in the Case. The funds shall be allocated and distributed as follows:

(a)     The Plaintiffs in this matter will each receive 125% of their calculated unpaid wages as if they were non-exempt for FLSA purposes and for a three-year period. Plaintiffs' settlement amount is to be equally distributed as back wages and liquidated damages. While Defendants deny any liability in this matter and maintain their position that Plaintiffs and all other similarly-situated

5

Mechanics/Technicians were properly paid in accordance with the FLSA, they have agreed to amicably resolve this matter and provide Plaintiffs with this payout amount. Specifically, the Plaintiffs will be paid ▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ as settlement for Plaintiffs' disputed back wages owed. Payment of this sum will be made on or before August 10, 2015, contingent upon Court approval of this settlement and a Court Order dismissing this case with prejudice. The Parties reached this amount by calculating each Plaintiff's disputed back wages. Each calculation was reached by taking the number of hours each Plaintiff worked over 40 in every workweek and multiplying that amount by half the regular rate. The regular rate was arrived at by taking the total compensation for a workweek and dividing that remuneration by the total number of hours worked in each work week, and factoring in the overtime or minimum wage potential damage violations. Each Plaintiff's respective pay-out for his/her back wages is outlined in Attachment B. Payment of this sum will be made on or before August 10, 2015, contingent upon a Court Order dismissing this case with prejudice. Because this amount is representative of back wages owed, each pay-out will be subject to the applicable payroll taxes.

(b) The Plaintiffs will be paid an additional ▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ for liquidated damages as settlement for Plaintiffs' disputed liquidated damages owed. Payment of this sum will be made on or before August 10, 2015, contingent upon Court approval of this settlement and a Court Order dismissing this case with prejudice. Plaintiffs will receive a separate IRS Form 1099 solely reflecting payment of these disputed

6

liquidated damages. While Defendants deny any liability in this matter and maintain their position that Plaintiffs and all other similarly-situated Technicians were exempt from the FLSA, they have agreed to amicably resolve this matter and provide Plaintiffs with this payout amount.

(c) Defendants shall be responsible for calculating the gross amounts before withholdings due to each Plaintiff, pursuant to the formula set forth in Paragraphs 5.1(a)above, based on wage information provided by Defendants, and for presenting this information to the Administrator to enable administration of the settlement in this matter. Plaintiffs agree that the wage information required to calculate the amount due to each Plaintiff has been provided by Defendants prior to the execution of this Agreement or will be provided hereafter.

(d) The amounts set forth in Paragraphs 5.1(a)-(b) shall be distributed to Plaintiffs in the form of Wage Settlement Checks and Liquidated Damages Checks, pursuant to the settlement administration process describe in Section VI of this Agreement.

(e) Representative Plaintiff, Billy Kidd will be paid ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓ in acknowledgement of his role as Representative Plaintiff for his efforts on behalf of the Class Member Plaintiffs. This payment is not for wages; instead, it is aService Payment to compensate Mr. Kidd for prosecuting this case on behalf of other similarly situated employees. Mr. Kidd shall receive an IRS Form 1099 solely for this amount. This amount is in addition to any amount Mr. Kidd would receive in his Wage Settlement Check as a participant in the Class settlement fund as provided below. Defendants shall deliver this Service Payment to Mr. Kidd on or before August 10, 2015, contingent upon Court approval of this settlement and a Court Order dismissing this case with prejudice.

7

(f) ███████████████████████████████████████████████████

███████████████ shall be paid to Crone & McEvoy, representing its attorneys' fees, costs, and other expenses for bringing this lawsuit, including the claims asserted under the Fair Labor Standards Act. Payment of this sum will be made on or before August 10, 2015, contingent upon Court approval of this settlement and a Court Order dismissing this case with prejudice. Crone & McEvoy will receive a separate IRS Form 1099 solely reflecting payment of this attorneys' fee and expense amount.

(g) ████████████████████████████████████ shall be paid to Morgan & Morgan, P.A. representing their portion of the attorneys' fees, costs, and other expenses for bringing this lawsuit, including the claims asserted under the Fair Labor Standards Act. Payment of this sum will be made on or before August 10, 2015, contingent upon Court approval of this settlement and a Court Order dismissing this case with prejudice. Morgan & Morgan will receive a separate IRS Form 1099 solely reflecting payment of this attorneys' fee and expense amount.

5.2  The amount for attorneys' fees, costs, and expenses as set forth in Paragraphs 5.1(b) – (c) is in full and complete settlement of all claims for attorneys' fees, costs, and expenses to be paid by Defendants to Plaintiffs and Plaintiffs' Counsel. Defendants and Plaintiffs agree that Defendants will pay the mediator's fee relating to the mediations on March 25, 2015 and April 9, 2015.

## VI.  SETTLEMENT ADMINISTRATION

6.1  Subject to the exceptions expressly described herein, Defendants will be responsible for administering the settlement of this matter, including paying for costs attendant

thereto. Defendants may choose to administer the settlement themselves or, in their sole discretion, may engage a third-party administrator to administer the settlement. Defendants shall be responsible for any fees charged by a third-party administrator. The Administrator will keep Plaintiffs' Counsel reasonably apprised of the progress and results of the settlement administration to ensure that Plaintiffs' Counsel has adequate information to monitor and provide oversight to protect the Class' interests under this Agreement and the corresponding settlement.

   6.2 On or before August 10, 2015, and contingent upon approval of this Agreement by the Court, the Administrator will prepare and mail to each Plaintiff who is to receive payment hereunder, or if applicable, to their lawful heir(s) or authorized legal representatives, Wage Settlement Checks in an amount as indicated in Attachment B, less applicable withholding for the *pro rata* share of back wages. Upon request by the Administrator, Plaintiffs' Counsel will agree to a reasonable extension of the time for mailing these checks, not to exceed an additional ten (10) business days. These checks will be sent to the last known address of each Plaintiff as listed on each Plaintiff's Opt-in Consent Form filed with the Court, or as otherwise provided by Plaintiffs' counsel.

   6.3 In addition to the Wage Settlement Checks, the Administrator will subsequently issue to each Plaintiff, or if applicable, their lawful heir(s) or authorized legal representatives, a corresponding W-2 Form for the Wage Settlement Check amount representative of the disputed back wages, and a corresponding 1099 Form for the Wage Settlement Check amount representative of the disputed liquidated damages.

   6.4 Any individual who opted into this case, or if applicable, his or her lawful heir(s) or authorized legal representatives, shall, by endorsing his or her Wage Settlement Checks, execute a Release, which Release acknowledges that all claims under the FLSA are fully settled and that the Case shall be dismissed with prejudice. Such a Release must be executed as a

condition to the receipt of any money by an individual Plaintiff. The Release will be affixed to the reverse side of every Wage Settlement Check issued to any Plaintiff in this case. A copy of such Release is attached hereto as Attachment C.  Along with the Wage Settlement Check and affixed Release, the Administrator will also distribute to each Plaintiff an individualized settlement agreement and release, a copy of which is attached hereto as Attachment D. The Administrator will direct any inquiries from Plaintiffs regarding the content of the settlement documents or the terms of settlement to Plaintiffs' Counsel.

6.5     Wage Settlement Check shall be treated as wages and subject to withholding. The Administrator will be responsible for calculating the amount of withholding applicable to each Settlement Check. Liquidated Damages checks shall be subject to 1099.

6.6     All Wage Settlement Checks and Liquidated Damages checks shall expire 90 days from issuance.

6.7     If any Wage Settlement Checks or Liquidated Damages checks mailed by the Administrator pursuant to Paragraph 6.2 are returned because of the inability to locate the proper individual or because of an incorrect address, the Administrator agrees to timely inform Plaintiffs' counsel, who will be responsible for taking reasonable additional steps to locate such individuals and for providing updated contact information to the Administrator.  The Administrator will resend each Wage Settlement Check and/or Liquidated Damages Check up to one (1) time based on updated information provided by Plaintiffs' counsel, at the request of Plaintiffs' counsel.  If a check is returned a second time, it will be forwarded to Plaintiffs' counsel who at that time shall assume sole responsibility (including paying for any associated costs) for delivery of the Wage Settlement Check.

6.8     Based on the reasonable request of a Plaintiff or Plaintiffs' counsel, the Administrator shall void and reissue a Wage Settlement Check and/or Liquidated Damages

10

check up to one (1) time for each Plaintiff during the course of administration of the settlement. In no event shall the Administrator be required to issue more than two (2) Wage Settlement Checks and/or Liquidated Damages check to any Plaintiff.

6.9     The Parties and the Administrator shall work together in a cooperative manner, pursuant to the terms of this Agreement, to make sure all settlement funds are disbursed to Plaintiffs in the manner set forth in this Agreement.  In the event that any settlement funds remain unclaimed, the Parties agree that such funds shall revert back to Defendants.The Administrator will notify and receive authorization from Plaintiffs' counsel prior to distributing any unclaimed funds in this matter.

## VII.    RELEASE

7.1     In consideration for the funds allocated and/or received pursuant to this Agreement and for the other promises by Defendants herein, **Representative Plaintiff**, on his own behalf, as well as for his collective heirs, assigns, trustees, guardians, receivers, administrators, executors, and agents, hereby settle, waive, release and discharge all claims whatsoever against Defendants with respect to each and every claim, cause of action, right, liability or demand of any kind or nature known and unknown at this time that Representative Plaintiff may have or may have had which arose at any time and which may arise at any time until this Agreement is duly executed. Such claims that are hereby released include by way of example, but not limitation, all claims:

   a.     arising from Representative Plaintiff's respective employment with and separation from Defendants, including claims for any pay, wages, severance or severance pay, medical expenses, bonus, vacation, sick pay, notice pay, reimbursement of expenses, insurance, pay for unused benefits and all other terms and conditions of employment or employment practices;

11

  b. based on discrimination, retaliation or harassment on the basis of age, race, religion, sex or disability under the Civil Rights Act of 1866, Title VII of the Civil Rights Act of 1964 (as amended), the Equal Pay Act, the Employee Retirement and Income Security Act of 1974 (as amended), the Americans with Disabilities Act of 1990, the Family and Medical Leave Act, or any other federal, state or local anti-discrimination laws or common laws relating to discrimination in employment or otherwise regulating the employment relationship, or affecting the health or safety of employees in the workplace;

  c. based on any oral, written or implied contract, tort (such as negligent or intentional infliction of emotional distress, negligent retention or supervision, defamation, fraud, slander, invasion of privacy, etc.), promissory estoppel, public policy, retaliation, or wrongful discharge theory; and

  d. relating to any attorney's fees, interest or costs (except as provided in Paragraphs 5.1(c) –(d) above), including attorney's fees incurred in connection with any review of this Agreement by an attorney.

This Agreement does not release any right or claim of Representative Plaintiffs which may arise after the date of this Agreement.

Representative Plaintiff further agrees not to sue or to authorize anyone else to file a lawsuit on their own behalf against Defendants (or any of the other released parties) on any claims released herein.  Representative Plaintiffs further agree not to become a member of any class suing Defendants (or the other parties released) on any claims released herein. Representative Plaintiff expressly acknowledges that this agreement does not relinquish any protected rights they may have under Title VII of the Civil Rights Act of 1964, the Equal Pay Act ("EPA"), the Americans with Disabilities Act ("ADA"), the Older Workers Benefit

12

Protection Act ("OWBPA"), the Age Discrimination in Employment Act ("ADEA"), or the National Labor Relations Act ("NLRA") to file a charge, testify, assist or participate in any manner in an investigation, hearing or proceeding conducted by the Equal Employment Opportunity Commission, the Office of Federal Contract Compliance, or the National Labor Relations Board; however Representative Plaintiffs agree that they cannot recover additional compensation or damages as a result of that participation.

7.2     Further, Representative Plaintiff, on his own behalf, as well as for his collective heirs, assigns, trustees, guardians, receivers, administrators, executors, and agents, and on behalf of all Plaintiffs in this Case, hereby release and forever discharge Defendants, their parents, subsidiaries, affiliates, and all of their respective present or former agents, employees, officers, directors, members, owners, partners, shareholders, consultants, attorneys, successors, insurers, and Walter Mathis and Curtis Clifton in their individual capacities (collectively, "the Released Parties") from any and all legal responsibilities, claims, rights of action, causes of action, suits, liabilities, demands, and damages whatsoever he/they has/have or may purport to have against the released parties arising out of Plaintiffs' allegations that Defendants did not pay Plaintiffs properly for the time they worked, including but not limited to such claims under the Fair Labor Standards Act, and any other law, statute, regulation, or common law doctrine upon which Plaintiffs might rely to recover damages for time worked.  This Release shall apply to any and all such claims arising during the Relevant Time Period.

The Opt-in Plaintiffs agree to release all claims for non-payment of wages against Defendants for the relevant time period.

7.3     Plaintiffs agree and acknowledge this Settlement Agreement does not constitute any admission of guilt, fault, responsibility, wrongdoing, discrimination, or liability on the part of Defendants or any of the Released Parties. Plaintiffs agree and acknowledge that Defendants

13

deny all allegations of improper or unlawful conduct or liability based on any claims, disputes, charges, complaints, or lawsuits covered by this Agreement, including this Case.

7.4     Defendants acknowledge that federal and state laws prohibit retaliation against employees who participate in wage litigation, and Defendants fully intend to comply with all federal and state laws prohibiting retaliation.

7.5     Plaintiffs acknowledge that Defendants have not made any representations concerning the taxability of consideration paid pursuant to this Agreement.  Plaintiffs acknowledge that any and all tax consequences are solely the responsibility of Plaintiffs, and that Defendants will comply with its duty to report Plaintiffs' receipt of cash consideration to the Internal Revenue Service and to all other appropriate agencies or authorities.  To the extent the consideration is taxable within the meaning of any federal or state tax codes, Defendants assume no liability for any required tax payments and/or consequences of cash consideration paid.

## VIII.     DISMISSAL OF THE CASE

8.1     The Parties further agree that upon the execution of this Agreement, Counsel for Plaintiffs and Counsel for Defendants shall execute an Agreed Order of Dismissal with Prejudice in the form attached hereto as Attachment A, and that such Agreed Order of Dismissal with Prejudice will be submitted promptly for entry by the Court, following approval of the settlement, if any.

## IX.     MISCELLANEOUS

9.1     As a condition precedent to the assertion by any party of any default or breach under this Agreement, such party shall give notice to the other reciting the nature of the claimed default or breach and the specific facts upon which the claim is based, and shall allow the other party fifteen (15) days from the receipt of such notice within which to cure such claimed default or breach. If any default shall occur and be continuing, the non-defaulting party may protect and

enforce its rights under this Agreement as it deems appropriate, including proceedings for specific performance of any covenant or agreement contained herein, and the non-defaulting party may enforce the payment of any obligations due hereunder or enforce any other legal or equitable right contained herein. All rights, remedies, and powers conferred upon the parties in the Agreement shall he deemed cumulative and not exclusive of any other rights, remedies, or powers provided in this Agreement or that the parties otherwise may have at law or in equity.

9.2     If any provision of this Agreement shall be held invalid or unenforceable, the remainder of this Agreement shall nevertheless remain in full force and effect. If any provision is held invalid or unenforceable with respect to particular circumstances, it shall nevertheless remain in full force and effect in all other circumstances. Moreover, the Court may modify the offending provision to the minimum extent necessary to render it enforceable. No waiver of any term or condition of this Agreement or any part hereof on one occasion shall be deemed a waiver of any other terms or conditions of this Agreement or any later breach of the same term or condition.

9.3     Should any questions arise as to the construction or interpretation of this Agreement, this Agreement shall be construed and interpreted according to the laws of the State of Tennessee.  Any action brought to enforce any terms of this Agreement shall be brought in a court of competent jurisdiction located in Shelby County, Tennessee.

9.4     This Agreement represents the full, integrated agreement of the Parties and can be modified or amended only by a writing signed by Representative Plaintiff, Plaintiffs' Counsel, Defendants, and Defendants' Counsel. This Agreement is the product of mutual drafting and negotiation between Plaintiffs' Counsel and Defendants' Counsel on behalf of the Parties. Accordingly, the rule of *contra proferentum* (construction against the drafter) shall not apply against either Party.

9.5	In the event any proceeding is brought to enforce the terms of this Agreement, the prevailing party shall recover against the other party its reasonable attorneys' fees and expenses incurred in connection with such action.

## X.	CERTIFICATION

10.1	The signatories hereto certify they are authorized to execute this Agreement on behalf of their respective parties. The parties understand the facts or law may be different than they presently understand or believe, they are signing this Agreement voluntarily, and they are not relying on any oral or other statements in signing this Agreement.

10.2	The Parties to this Agreement acknowledge it reflects their good-faith compromise of the claims raised in the Case based upon their respective assessments of the mutual risks and costs of further litigation.

10.3	By signing this Agreement, the Parties certify they have read and understand the Agreement, and they have had an opportunity to consult with their respective attorneys concerning the Agreement.

AGREED:

_____
REPRESENTATIVE PLAINTIFF, Billy J. Kidd

Date: _____

Mathis Tire and Auto Service, Inc. and Direct Tire Distributors, Inc.

By:_____

Its:_____

Date:_____

17